Filed 4/28/22  P. v. Freeman CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B310870 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. A354010 |
| MARK THEODORE FREEMAN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark Hanasono, Judge.  Affirmed.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Mark Theodore Freeman appeals from the superior court's order denying his petition for resentencing under Penal Code section 1170.95.[1] We affirm because the record of conviction establishes Freeman is ineligible for resentencing as a matter of law.

## BACKGROUND[2]

In 1981 a jury convicted Freeman of first degree murder, rape, and multiple counts of kidnapping for robbery and robbery. Freeman's crime spree involved 12 victims.[3] Freeman and his

---

[1] References to statutes are to the Penal Code.

[2] Given that the trial in this case took place more than 40 years ago, little remains of the trial court records. On May 6, 2021, Freeman's appellate counsel sent a letter to the superior court asking it to search for, and augment the record with, a number of items, including the charging document, probation department reports, minute orders for the verdicts and sentencing proceedings, and abstracts of judgments, as well as reporters' transcripts for the verdicts and sentencing. On September 22, 2021, the superior court filed a supplemental clerk's transcript with a certificate stating the court had searched the court file, the courtroom, the clerk's office, and the archives, and none of the requested records could be found. However, the appellate record does contain the verdict forms and the minute order of Freeman's March 26, 1981 sentencing (though parts of that document are illegible).

[3] We take the factual background from our opinion in Freeman's direct appeal, *People v. Freeman et al.* (March 25, 1983, 39986) [nonpub. opn.] (*Freeman I*), which Freeman attached to his Reply Brief on Eligibility filed in the trial court. As the truth of the facts of the crimes recited in *Freeman I* are not necessary for our resolution of this appeal, we summarize

co-defendant, Michael Jerome Ficklin, forced a number of victims into the trunks of cars and robbed them. Two other men— Jimmie Turner and Andre Hurd—were involved in some of the crimes. Freeman raped victim Ora M. The perpetrators also robbed a reverend, Lamont Brown, and his two female companions. The perpetrators let the women go, as one of them was pregnant.

A few days later, Freeman, Ficklin, and Hurd "came at [a victim] with guns," as he parked at a fast food restaurant where he was the manager. They forced him into the back seat of his car; Freeman held a gun to his stomach and took his watch, wallet, and everything in his pockets. Freeman, Ficklin, and Hurd then went to the victim's apartment, where his wife and two small children were. They tied up the victim, stole stereo equipment and other items, and left, taking the victim's car.

The threesome—all carrying guns—then robbed another victim. When one of the perpetrators told the others to put that victim in the car trunk, he began to run, saw a police car, and yelled. Police chased Freeman and arrested him after they found him hiding in some weeds.

The murder victim was Tony Johnson. On the morning of September 22, 1979, Freeman and Ficklin were seen driving Johnson's green car when they arrived at a restaurant. When the green car was towed a few days later, Johnson's body was found in the trunk. He had died from a single gunshot wound to his back. An upward dent in the trunk suggested Johnson had tried to get out of the trunk.

---

them only for the basis of Freeman's conviction. (See *People v. Woodell* (1998) 17 Cal.4th 448, 459-460.)

3

Freeman and Ficklin were tried together with dual juries. Each blamed the other for Johnson's death. Freeman's and Ficklin's "[a]ssociates" "also testified, primarily implicating . . . Freeman who had boasted that he had killed Johnson because Johnson wanted to get out of the trunk and made too much noise."

Freeman's jury convicted him of the first degree murder of Johnson with special circumstances (murder committed in the commission of kidnapping and robbery), the rape of Ora M., six counts of kidnapping for robbery, and twelve counts of robbery.[4] As to both Freeman and Ficklin, the juries found true the allegation that a principal had been armed with a handgun in the commission of the murder under then-applicable section 12022, subdivision (a).[5] The trial court sentenced Freeman to indeterminate terms of life without the possibility of parole on the murder count and life (with the possibility of parole) on the kidnapping for robbery counts, as well as to determinate terms on the rape and robbery counts.

Freeman raised several issues on appeal. Among them was the contention that "[t]he special circumstances allegations must be stricken because the jury was not properly instructed

---

[4]    These were counts 1-11 and 13-21. The record does not reflect what happened to the twelfth count in the information or indictment, if there was one.

[5]    It appears the jury did not find true an allegation that Freeman personally used a firearm in the commission of the murder. In *Freeman I*, the appellate court noted, "Because the case was tried in front of two juries, we are confronted with the unusual situation that each jury found, in effect, that the defendant being tried by the other jury was the actual killer."

concerning intentional conduct on the part of a person who was not the actual killer of the decedent." (*Freeman I*.) The *Freeman I* court rejected this contention.

The special circumstances alleged, and found true, in Freeman's case were that "[t]he murder was committed while the defendant was engaged in[,] or was an accomplice in[,] the commission of . . . [r]obbery in violation of Section 211 [or] [¶] . . . [k]idnapping in violation of Sections 207 and 209." (*Freeman I*.) (See former § 190.2, subd. (a)(17)(i), (ii).[6]) The appellate court quoted from section 190.2, subdivision (b) as it then read: "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting any actor in the commission of murder in the first degree" shall be sentenced to death or life without parole if one or more of the special circumstances has been charged and found true. (*Freeman I*.)[7]

The *Freeman I* court noted the trial court had instructed the jury with the 1981 revision of CALJIC No. 8.80: " 'If defendant Mark Freeman was not the actual killer, it must be

[6] These special circumstances now are contained in section 190.2, subdivision (a)(17)(A), (B).

[7] The "actual killer" provision still appears in section 190.2, subdivision (b). Section 190.2, subdivision (c) now provides, "Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) has been found to be true under Section 190.4." (§ 190.2, subds. (b), (c).)

proved beyond a reasonable doubt that he intentionall[ ]y aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree before you are permitted to find the alleged special circumstances of that first degree murder to be true as to defendant Mark Freeman.' " "The jury was further instructed:

> 'To find that the special circumstance referred to in these instructions as murder in the commission of robbery or kidnapping for robbery is true[,] it must be proved that the murder was committed while the defendant was engaged in or was an accomplice in the commission or attempted commission of a robbery or kidnapping for robbery, or that the murder was committed during the immediate flight after the commission or attempted commission of a robbery or kidnapping for robbery. [¶] You must also find that either the defendant was the actual killer or that beyond a reasonable doubt that he intentionally aided, abetted, counseled, commanded, induced, solicited, requested or assisted the actual killer in the commission of the murder in the first degree.' "

(*Freeman I.*)  (See former CALJIC Nos. 8.80 and 8.81.17.)

The court discussed an ambiguity in the reference to an "accomplice" in the then-applicable language of section 190.2, subdivision (a)(17)(i).  The court construed the language to require, "for special circumstances to be found in a case of an aider and abettor to a robbery felony murder, a person not the

6

actual killer must have the intent that the victim be killed." (*Freeman I*.)[8]  The court stated, "the Freeman jury was instructed in the language of section 190.2, subdivision (b)," and "[t]he plain words of th[at] statute" "require[d] an intentional killing."  (*Ibid*.)

The *Freeman I* court affirmed Freeman's conviction but modified the judgment to give him additional presentence custody credits.  (*Freeman I*.)

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect, Freeman filed on January 8, 2019, a petition for resentencing under section 1170.95.  On a downloadable form, Freeman checked boxes 1, 2a, 3, 4, and 8. Freeman did not check box 5 or any of its subboxes, including the boxes that stated, "I was not the actual killer" and "I did not, with the intent to kill, aid, abet, counsel, command, induce,

---

[8]  As the trial court here noted, later that year the California Supreme Court "reached the same conclusion that this version of section 190.2 required an intent to kill for the non-killer aider and abettor.  (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 135.)"  (See also *People v. Anderson* (1987) 43 Cal.3d 1104, 1138-1139 [overruling *Carlos* to the extent it required an intent to kill for actual killers, leaving in place the intent requirement for aiders and abettors].)  The trial court also noted, "In 1990, Proposition 115 added subdivisions (c) and (d) to section 190.2. This current version of the felony murder special circumstance requires that the non-killer either intended to kill or was a major participant in the underlying felony and acted with reckless indifference to human life.  (*People v. Mil* (2012) 53 Cal.4th 400, 408-409.)"  There is no major participant/reckless indifference issue in this case, as Freeman was tried and convicted years before that language was added to the statute.

7

solicit, request, or assist the actual killer in the commission of murder in the first degree."[9]

The superior court appointed counsel for Freeman. On August 12, 2019, the district attorney filed an opposition to Freeman's petition. Most of the prosecution's response was devoted to its contention that Senate Bill 1437 was unconstitutional. The prosecution also filed a separate response to Freeman's petition, asserting that "[b]ecause the Jury found the special circumstance true that the defendant intentionally aided and abetted the killer, and because the court of appeals [*sic*] reviewed this matter and found that, on the plain face of the statute this special circumstance finding requires an intent to kill, the defendant is ineligible for section 1170.95 resentencing."

On October 24 and December 30, 2019, respectively, Freeman filed two briefs in opposition to the district attorney's brief on the constitutionality issue. On June 8, 2020, Freeman filed a Reply Brief on Eligibility. Freeman stated he was prosecuted under a felony-murder theory, the jury "did not find beyond a reasonable doubt the [firearm] use allegation as to" him, and the affirmance on direct appeal predated the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788, and *People v. Clark* (2016) 63 Cal.4th 522.[10] Freeman

---

[9]     The record contains an identical petition file-stamped January 14, 2019.

[10]     Counsel apparently did not realize that those cases—involving the "major participant/reckless indifference" issue—have no bearing on Freeman's eligibility. As we noted, subdivision (d) of section 190.2 was enacted after Freeman was convicted. (See § 190.2, subd. (d), added by initiative, Primary Elec. (June 5, 1990) Prop. 115, § 10.) Thus the factual

8

contended he had made a prima facie showing by alleging he had been "charged with felony murder," "convicted of first or second degree murder," and could "no longer be convicted of first or second degree murder under the new law." Freeman did not address his failure to check any of the boxes in section 5 of the form. Freeman stated he "submit[ted] on the issue of SB 1437 eligibility based on the entire record of conviction."

On January 14, 2021, the trial court summarily denied Freeman's petition in a written order. The court first rejected the prosecution's constitutional challenge to Senate Bill 1437. The court then considered whether Freeman had made a prima facie showing that he was eligible for relief. The court concluded "[t]he special circumstances findings render Freeman ineligible for relief under section 1170.95."

The court discussed the *Freeman I* court's statement that section 190.2, subdivision (b) required that a non-killer accomplice "must 'intentionally' aid and abet in the commission of first degree murder." The court stated, "Because the jury found the special circumstances true, it necessarily found that Freeman had the intent to kill. His conviction for murder would stand despite the changes to Section 188 or 189 by [Senate Bill] 1437. Thus, Freeman is ineligible for resentencing as a matter of law."

Freeman appealed and we appointed counsel to represent him on appeal. After examining the record, counsel filed an opening brief raising no issues and asking this court independently to review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Counsel stated he had written

---

question of whether he was a major participant who acted with reckless indifference was not submitted to Freeman's jury.

9

to Freeman to advise him he was filing a *Wende* brief and Freeman had the right to file a supplemental brief. We also sent Freeman a letter on December 8, 2021, telling him the same thing. We have not received a supplemental brief from Freeman.

## DISCUSSION

Senate Bill 1437 took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).)[11]

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e). It provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life as described in section 190.2, subdivision (d). (See *Gentile*, *supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

---

[11] In 2021, the Legislature significantly amended the statute in Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2). The Governor signed the new legislation on October 5, 2021, and it took effect on January 1, 2022.

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis, supra*, 11 Cal.5th at pp. 959-960; *Gentile, supra*, 10 Cal.5th at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivisions (b)(3) and (c) require the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he is entitled to relief.  (See *Lewis*, supra, 11 Cal.5th at pp. 959-960.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under [section 1170.95,] subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.

11

If so, the court must issue an order to show cause." '[12] . . . 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid*.; see *People v. Daniel* (2020) 57 Cal.App.5th 666, 675.)

Here, Freeman is ineligible for relief as a matter of law. To be eligible for resentencing, Freeman was required to show that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) Even if Freeman had asserted in his petition that he was not the actual killer or a direct aider and abettor—and, as we have said, he did not—the jury instructions given at Freeman's trial conclusively demonstrate he cannot make the required showing. As the *Freeman I* court stated, Freeman's jury was instructed that, if he was not the actual killer, the prosecution had to prove he intentionally aided and abetted the actual killer in the commission of first degree murder. By convicting Freeman of first degree murder and finding true the special circumstances that the murder was committed in the commission of kidnapping and robbery, the jury found Freeman had "the intent that the victim be killed." (*Freeman I*.) (See § 1170.95, subd. (d)(3) [court considering a petition for resentencing may "consider the procedural history of the case recited in any prior appellate opinion"]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1054-1055 [trial court may rely on

---

[12] The court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

12

jury instructions when determining whether petitioner has made a prima facie showing of entitlement to relief]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 673-674 [same]; cf. *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1157, 1167-1168 [petitioner not entitled to relief where he was convicted as direct aider and abettor].)

We are satisfied Freeman's counsel has fully complied with his responsibilities and that no arguable issues exist.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110; *Wende, supra,* 25 Cal.3d at p. 441.)

## DISPOSITION

The postjudgment order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, J.

We concur:

EDMON, P. J.

KALRA, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.